# EXHIBIT 1

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

SUPERIOR COURT
CIVIL ACTION NO. 06-3886-BLS

OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY,
Plaintiff,

v.

TRANSCONTINENTAL TITLE COMPANY
Defendant

**COMPLAINT**

I. Introduction

This is an action by Old Republic National Title Insurance Company ("Old Republic") seeking damages from Transcontinental Title Company ("Transcon") under an agency agreement between them, and for negligence. The agency agreement provides for certain minimum damages based upon an agreed upon formula. In addition, Old Republic asserts a claim for damages proximately caused by Transcon's negligence for which Transcon is liable over and above the contractual damages.

II. The Parties

1. The Plaintiff, Old Republic is a Minnesota corporation with a usual place of business in Boston, Suffolk County.

2. The Defendant, Transcon is a Florida corporation registered as a foreign corporation in the Commonwealth with a registered agent in Boston, Suffolk County.

III. The Agency Agreement

3. Transcon is an agent of Old Republic for the purpose of issuing policies of title insurance in connection with mortgage loan transactions.

4. The agency relationship between Transcon and Old Republic began in December 1990, and their current relationship is memorialized in an agreement dated June 24, 2004, entitled "Agreement for Appointment of Policy Issuing Agent for Old Republic National Title Insurance Company" (the "Agency Agreement") a copy of which is attached to this Complaint as Exhibit "A."

5. Under the Agency Agreement, Transcon was authorized to issue Old Republic title policies in various states. The Agency Agreement sets forth Old Republic's and Transcon's respective duties, responsibilities, and rights.

6. The Agency Agreement contains a section entitled: "Responsibility for Loss," which described the types of losses for which Transcon assumed responsibility. That provision reads, in part:

> 1. Agent is responsible for the following losses:
>
> A. Defalcation, fraud or dishonesty on the part o the Agent . . .;
>
> B. Intentional or negligent failure of Agent to comply with the terms and requirements of this agreement or of the rules, regulations or instructions given to Agent by Insurer . . .;
>
> * * *
>
> D. The improper closing, or atttempted closing, by the Agent, including but not limited to, (1) loss or misapplication of customer funds, documents or other things of value entrusted to Agent . . ., and/or (2) failure to disburse properly or close in accordance with escrow or closing instructions, and/or . . . (4) all other acts or

> omissions to act by Agent arising out of or related to Agent's closing activities that give rise to or cause a loss or damage to Insurer. . . .

7. Under the Agency Agreement, Transcon was entitled to retain a portion of the title insurance premium on each policy it issued and was required to remit the balance of the premium to Old Republic. The allocation between Old Republic and Transcon varied to some degree from state to state, but the standard allocation was 85% to Transcon and 15% to Old Republic.

IV. The Excessive Claims/Stop Loss Provision

8. The Agency Agreement contains a provision entitled: "Excessive Claims/Stop Loss Agreement." That provision (the "Excessive Claims Provision") requires Transcon to reimburse Old Republic on an annual basis for all amounts paid on claims under policies issued by Transcon in excess of 5% of the premiums remitted by Transcon to Old Republic in that year.

9. The Excessive Claims Provision was included in the Agency Agreement to benefit both Old Republic and Transcon.

10. For Old Republic, that provision allowed it, in the event of large losses attributable to Transcon's policies, to recoup a certain portion of those losses on Transcon's policies without having to prove any fault against Transcon as to each claim. The reimbursement by Transcon would be made annually based upon all claims on a national basis.

11. For Transcon, the Excessive Claims Provision shielded it from negligence claims and the necessity of defending itself in litigation and/or submitting claims to its professional liability carrier, unless the aggregate claims reached a certain threshold.

12. Transcon's claims exceeded the 5% threshold in 2005 and 2006. Transcon paid Old Republic $285,836 for the 2005 claims under the Excessive Claims Provision. Transcon has

not yet paid Old Republic any amounts for the 2006 claims under the Excessive Claims Provision, but those claims have already exceeded the 5% threshold.

13. By a letter dated March 21, 2006, Transcon through it counsel, notified Old Republic of its intention to terminate the Agency Agreement. A copy of that letter (the "Termination Letter") is attached as Exhibit "B."

14. Transcon contends that any and all of its duties and/or obligations arising from the Agency Agreement will terminate 180 days after the date of the Termination Letter. Old Republic contends that Transcon's liability for damages under the Excessive Claims Provision and other provisions of the Agency Agreement continues despite any alleged termination of the Agency Agreement.

V. Massachusetts Claims Caused by Transcon's Negligence

*A. The Wayland Claim*

15. On or about December 10, 2003, Transcon, through one of its agents, conducted a closing (the "Wayland Closing") of a residential mortgage refinancing for World Savings Bank ("World") relating to property located at 237 Glezen Lane, Wayland, Massachusetts (the "Wayland Property").

16. Prior to the Wayland Closing, Old Republic issued a Closing Protection Letter to World providing coverage for loss incurred by any failure of Transcon to, among other things, "comply with your written closing instructions." A copy of the Closing Protection Letter issued to World is attached to this complaint as Exhibit "C."

17. Prior to the Wayland Closing, World provided Transcon with a document constituting its Closing Instructions, a copy of which is attached to this Complaint as Exhibit "D."

18. The Closing Instructions contained the following requirements:

> "<u>RECORD THE DOCUMENTS BELOW (NOTARY REQUIRED)</u>
> (x) **Security Instrument dated 12/10/03 for $445,000.00**
> (x) **Exhibit 'A' Legal Description to security instrument . . ."**

<u>See</u> Exhibit "D,"page 5.

> "THE NAMES SHOWN ON THE ENCLOSED SECURITY INSTRUMENT MUST BE EXACTLY AS TITLE TO THE PROPERTY IS HELD. . . .
>
> (x) **The Security Instrument in the amount of $445,000.00 is to be recorded in FIRST lien position."**

<u>See</u> Exhibit "D,"page 7.

> **"x All vested owners to sign security instrument."**

<u>See</u> Exhibit "D,"page 10.

19. At the Wayland Closing, World intended to loan its borrower, Badia Sayeh, $445,000 to be secured by a first mortgage covering the Wayland Property.

20. At the time of the Wayland Closing, the Wayland Property was owned by the borrower, Badia Sayeh, and her husband, Mouldi Sayeh, as tenants by the entirety.

21. At the Wayland Closing, Badia Sayeh executed an Adjustable Rate Mortgage Note (the "World Note") and a Mortgage in favor of World (the "World Mortgage").

22. Despite the joint ownership of the Property, Transcon failed to obtain Mouldi Sayeh's signature on the World Mortgage in violation of the Closing Instructions and the Agency Agreement.

23. When Transcon discovered that the World Mortgage had not been signed by Mouldi Sayeh, it sent the original to Mr. and Mrs. Sayeh for signature by Mouldi Sayeh. This was also a violation of the Closing Instructions which contains the following requirement (on page 2): "DO NOT MAIL out or otherwise release documents from your office for signature without our prior approval." See Exhibit "D," attached.

24. The World Mortgage was never executed by Mouldi Sayeh, nor was the original ever returned to Transcon.

25. Because Transcon sent the original World Mortgage to Mr. and Mrs. Sayeh for the additional signature, the World Mortgage was not recorded in the Registry and Transcon no longer had even a partially executed original mortgage in its possession. This failure by Transcon was also a violation of the Closing Instructions and the Agency Agreement.

26. Despite Transcon's failure to obtain the signatures of both owners of the Property on the World Mortgage, the failure to record the World Mortgage in the Registry of Deeds, and the mailing of the original World Mortgage to the borrower, Transcon nonetheless disbursed all of the loan proceeds and deducted its fee from those proceeds.

27. The loan proceeds were used, in part, to pay off an then-existing first mortgage held by Washington Mutual Bank, FA, dated March 27, 2002, and recorded in the Middlesex Southern District Registry of Deeds (the "Registry") at Book 35172 Page 65, which had a balance of $456,024.58. The Washington Mutual Mortgage was subsequently discharged.

28. The World loan proceeds were also used to pay outstanding real estate taxes on the Property in the amount of $2,522.40.

29. Since the time of the Wayland Closing, other mortgages were recorded against the Wayland Property and the World Note remains unsecured.

30. On or about March 3, 2006, World submitted a claim to Old Republic seeking indemnification under the Policy and the Closing Protection Letter.

31. To fulfill its obligations to its insured lender, on or about June 30, 2006, Old Republic was required to pay World the full outstanding balance due under the loan to Badia Sayeh in the amount of $483,737.08. In exchange for that payment, World assigned Old Republic all of its rights under the World Note and the World Mortgage, which Old Republic also holds by way of subrogation.

32. On or about August 4, 2006, Badia Sayeh commenced a case in the United States Bankruptcy Court for the District of Massachusetts under Chapter 13 of the Bankruptcy Code (Case No. 06-12596-RS). The filing of Ms. Sayeh's bankruptcy case makes any significant recovery on the Wayland Mortgage extremely unlikely.

*B. The Sherborn Claim*

33. On or about July 14, 2003, Transcon, through one of its agents, conducted the closing of residential mortgage loan refinancing (the "Sherborn Closing") for First Residential Mortgage-Louisville relating to property located at 18 Pleasant Street, Sherborn, Massachusetts (the "Sherborn Property").

34. As part of the closing, Transcon was responsible for obtaining a mortgage (the "Sherborn Mortgage") from the then-owners of the Sherborn Property, William E. Crowley and Sheila A. Crowley in the amount of $502,000.

35. Transcon was also responsible for ensuring that the Sherborn Mortgage was recorded in the Middlesex South District Registry of Deeds prior to disbursing the loan proceeds or issuing a title policy.

36. Transcon obtained the signature of William E. Crowley on the Sherborn Mortgage, but failed to have the joint owner Sheila A. Crowley sign it. Transcon also failed to record the Sherborn Mortgage.

37. The Sherborn Mortgage was assigned to ABN AMRO Mortgage Group, Inc.

38. After the borrower, William E. Crowley, defaulted, ABN AMRO discovered that the Sherborn Mortgage had not been signed by Sheila A. Crowley, and that the Sherborn Mortgage had never been recorded in the Middlesex South District Registry of Deeds. In addition, the original of the Sherborn Mortgage cannot be located.

39. Transcon issued a loan policy to First Residential Mortgage-Louisville (which is now held by ABN AMRO), without first recording the Sherborn Mortgage in the Middlesex South District Registry of Deeds.

40. Despite Transcon's failure to obtain the signatures of both owners of the Sherborn Property on the Sherborn Mortgage, the failure to record the Sherborn Mortgage in the Registry of Deeds, and the loss of the original Sherborn Mortgage, Transcon nonetheless disbursed all of the loan proceeds and deducted its fee from those proceeds.

41. On or about May 5, 2006, ABN AMRO submitted a claim to Old Republic under the loan policy issued by Transcon, seeking payment of any loss due to the title problem created by Transcon's failure to obtain the signatures of both Mr. and Mrs. Crowley on the Sherborn

Mortgage, Transcon's failure to record the Sherborn Mortgage in the Middlesex South District Registry of Deeds, and Transcon's loss of the original Sherborn Mortgage.

42. Since the time of the Sherborn Closing, other mortgages were recorded against the Sherborn Property and the ABN AMRO loan remains unsecured.

43. On or about July 31, 2006, Sheila A. Crowley commenced a case in the United States Bankruptcy Court for the District of Massachusetts under Chapter 7 of the Bankruptcy Code (Case No. 06-12526-JNF). The filing of Ms. Crowley's bankruptcy case makes any significant recovery on the Sherborn Mortgage extremely unlikely.

44. Old Republic will likely be required to pay ABN AMRO $502,000 on its claim.

COUNT I: <u>BREACH OF THE AGENCY AGREEMENT</u>

45. Old Republic repeats and incorporates all of the allegations contained in each and every one of the above paragraphs.

46. Transcon committed multiple breaches of its Agency Agreement with Old Republic, including but not limited to the following conduct:

> a. the failure to obtain the signatures of both owners of the Property on the World Mortgage;
>
> b. the failure to record the World Mortgage in the Registry of Deeds;
>
> c. the mailing of the original World Mortgage to the borrower without authorization from World;
>
> d. the wrongful disbursement of the loan proceeds in connection with the Wayland Closing without a recorded mortgage securing repayment;
>
> e. the issuance of a loan policy of title insurance in connection with the Wayland Closing despite the errors set forth above;

f. the failure to obtain the signatures of both owners of the Property on the Sherborn Mortgage;

g. the failure to record the Sherborn Mortgage in the appropriate Registry of Deeds;

h. the loss of the original Sherborn Mortgage;

i. the wrongful disbursement of the loan proceeds in connection with the Sherborn Closing without a recorded mortgage securing repayment; and

j. the issuance of a loan policy of title insurance in connection with the Sherborn Closing despite the errors set forth above.

47. As a direct and proximate result of Transcon's breaches, Old Republic has sustained or will sustain losses in excess of $1,000,000.

COUNT II: <u>BREACH OF THE CLOSING INSTRUCTIONS</u>

48. Old Republic repeats and incorporates all of the allegations contained in each and every one of the above paragraphs.

49. Transcon committed multiple breaches of the Closing Instructions which Transcon was required to follow, including but not limited to the following conduct:

a. the failure to obtain the signatures of both owners of the Property on the World Mortgage;

b. the failure to record the World Mortgage in the Registry of Deeds;

c. the mailing of the original World Mortgage to the borrower without authorization from World;

d. the wrongful disbursement of the loan proceeds in connection with the Wayland Closing without a recorded mortgage securing repayment;

e. the issuance of a loan policy of title insurance in connection with the Wayland Closing despite the errors set forth above;

f. the failure to obtain the signatures of both owners of the Property on the Sherborn Mortgage;

g. the failure to record the Sherborn Mortgage in the appropriate Registry of Deeds;

h. the loss of the original Sherborn Mortgage;

i. the wrongful disbursement of the loan proceeds in connection with the Sherborn Closing without a recorded mortgage securing repayment; and

j. the issuance of a loan policy of title insurance in connection with the Sherborn Closing despite the errors set forth above.

50. Old Republic, as the assignee of World and by way of subrogation, is entitled to assert the rights of its insured lenders for breach of the Closing Instructions.

51. As a direct and proximate result of Transcon's violations of the Closing Instructions, Old Republic has sustained losses in excess of $1,000,000.

COUNT III: NEGLIGENCE / GROSS NEGLIGENCE

52. Old Republic repeats and incorporates all of the allegations contained in each and every one of the above paragraphs.

53. Transcon was negligent and/or grossly negligent in the performance of its duties owed to Old Republic and its insured lenders, including but not limited to the following conduct:

a. the failure to obtain the signatures of both owners of the Property on the World Mortgage;

b. the failure to record the World Mortgage in the Registry of Deeds;

c. the mailing of the original World Mortgage to the borrower without authorization from World;

d. the wrongful disbursement of the loan proceeds in connection with the Wayland Closing without a recorded mortgage securing repayment;

e. the issuance of a loan policy of title insurance in connection with the Wayland Closing despite the errors set forth above;

f. the failure to obtain the signatures of both owners of the Property on the Sherborn Mortgage;

g. the failure to record the Sherborn Mortgage in the appropriate Registry of Deeds;

h. the loss of the original Sherborn Mortgage;

i. the wrongful disbursement of the loan proceeds in connection with the Sherborn Closing without a recorded mortgage securing repayment; and

j. the issuance of a loan policy of title insurance in connection with the Sherborn Closing despite the errors set forth above.

54. Old Republic, as the assignee of World and by way of subrogation, is entitled to assert the rights of its insured lenders for negligence against Transcon.

55. As a direct and proximate result of Transcon's negligence and/or gross negligence, Old Republic has sustained losses in excess of $1,000,000.

COUNT IV: INDEMNIFICATION

56. Old Republic repeats and incorporates all of the allegations contained in each and every one of the above paragraphs.

57. Old Republic is entitled to indemnification from Transcon for all of its losses plus attorneys' fees based upon Transcon's conduct, including but not limited to:

a. the failure to obtain the signatures of both owners of the Property on the World Mortgage;

b. the failure to record the World Mortgage in the Registry of Deeds;

c. the mailing of the original World Mortgage to the borrower without authorization from World;

d. the wrongful disbursement of the loan proceeds in connection with the Wayland Closing without a recorded mortgage securing repayment;

e. the issuance of a loan policy of title insurance in connection with the Wayland Closing despite the errors set forth above;

f. the failure to obtain the signatures of both owners of the Property on the Sherborn Mortgage;

g. the failure to record the Sherborn Mortgage in the appropriate Registry of Deeds;

h. the loss of the original Sherborn Mortgage;

i. the wrongful disbursement of the loan proceeds in connection with the Sherborn Closing without a recorded mortgage securing repayment; and

j. the issuance of a loan policy of title insurance in connection with the Sherborn Closing despite the errors set forth above.

COUNT V: VIOLATION OF G.L. CHAPTER 93A

58. Old Republic repeats and incorporates all of the allegations contained in each and every one of the above paragraphs.

59. Transcon's deduction of its own fee from the loan proceeds, plus its gross negligence and dereliction of its duties to Old Republic and World, including but not limited to:

a. the failure to obtain the signatures of both owners of the Property on the World Mortgage;

b. the failure to record the World Mortgage in the Registry of Deeds;

c. the mailing of the original World Mortgage to the borrower without authorization from World;

d. the wrongful disbursement of the loan proceeds in connection with the Wayland Closing without a recorded mortgage securing repayment;

e. the issuance of a loan policy of title insurance in connection with the Wayland Closing despite the errors set forth above;

f. the failure to obtain the signatures of both owners of the Property on the Sherborn Mortgage;

g. the failure to record the Sherborn Mortgage in the appropriate Registry of Deeds;

h. the loss of the original Sherborn Mortgage;

i. the wrongful disbursement of the loan proceeds in connection with the Sherborn Closing without a recorded mortgage securing repayment; and

j. the issuance of a loan policy of title insurance in connection with the Sherborn Closing despite the errors set forth above.

constitutes a violation of G.L. c. 93A, §§2&11.

60. As a direct and proximate result of Transcon's violation of G.L. c. 93A, Old Republic has sustained, and will continue to sustain, damages in excess of $1,000,000, and has incurred, and will continue to incur, costs and attorneys' fees.

61. Old Republic is entitled to a judgment against Transcon for double or treble damages plus attorneys' fees.

COUNT VI: <u>DECLARATORY JUDGMENT</u>

62. Old Republic repeats and incorporates all of the allegations contained in each and every one of the above paragraphs.

63. An actual and justiciable controversy exists between Old Republic and Transcon concerning the effect of the Termination Letter, if any on the respective rights and liabilities of the parties under the Agency Agreement as to future claims which may arise after September 18, 2006.

64. While it is Old Republic's position that Transcon continues to be liable to it for losses even after the expiration of the 180 day period following the issuance of the Termination

Letter, Old Republic is informed and believes that Transcon will claim that it has no further liability under any theory following the expiration of said period.

65. Old Republic seeks and is entitled to a judgment declaring that despite the issuance of the Termination Letter, Transcon remains liable to Old Republic under the Excessive Claims Provision for all amounts paid on claims under policies issued by Transcon in excess of 5% of the premiums remitted by Transcon to Old Republic in 2006.

66. Old Republic seeks and is entitled to a judgment declaring that despite the issuance of the Termination Letter, Transcon's liability to Old Republic under the Excessive Claims Provision, and other provisions of the Agency Agreement, continues as to all claims under Old Republic policies issued by Transcon even if those claims arise after September 18, 2006, which is the first business day following 180 days after the date of the Termination Letter.

67. Old Republic seeks and is entitled to a judgment declaring that despite the issuance of the Termination Letter, Transcon's liability to Old Republic will continue in future years (after 2006) for all losses incurred by Old Republic engendered by Transcon's acts or omissions in the issuance of policies and/or while acting as a closing agent for transactions in which Old Republic policies were issued. This liability will continue to exist either under the Responsibility for Loss Provision contained in the Agency Agreement or alternatively under the Excessive Claims Provision or under other provisions of the Agency Agreement, applicable common law and statutory negligence and tort law.

WHEREFORE, the Plaintiff, Old Republic National Title Insurance Company requests that the Court:

1. Enter judgment in favor of Old Republic National Title Insurance Company and against Transcontinental Title Company in the amount of double or treble damages, plus interest, costs, and attorneys' fees.

2. Enter judgment declaring that Transcontinental Title Company remains liable to Old Republic National Title Insurance Company under the Agency Agreement for claims which may arise after September 18, 2006.

3. Grant such other relief as the Court deems just.

Old Republic National Title Insurance Company
By its attorneys,

Thomas M. Looney [signature]

Thomas M. Looney, BBO #555040
Richard E. Gentilli, BBO #189080
Bartlett Hackett Feinberg P.C.
155 Federal Street, 9th Floor
Boston, MA 02110
617-422-0200

Dated: September 15, 2006

I HEREBY ATTEST AND CERTIFY ON
OCT. 23, 2006, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: [signature]
ASSISTANT CLERK.