# EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OLD REPUBLIC NATIONAL TITLE INSURANCE CO.,<br><br>Plaintiff/<br>Counterclaim-Defendant,<br><br>v.<br><br>TRANSCONTINENTAL TITLE CO.,<br><br>Defendant/<br>Counterclaim-Plaintiff. | Civil Action No. 06-11903-NMG |

**TRANSCONTINENTAL TITLE COMPANY'S**
**MOTION TO STAY PARALLEL PROCEEDINGS**

Defendant/counterclaim-plaintiff Transcontinental Title Company ("TCT") hereby moves to stay all federal district court proceedings in which the plaintiff/counterclaim-defendant, Old Republic National Title Insurance Co. ("Old Republic"), seeks duplicative relief concerning the scope and enforceability of § XX(C) (the "Excessive Claims Provision") of the parties' June 2004 Agency Agreement.

Since TCT answered the Complaint (and counterclaimed against Old Republic) in October of 2006, Old Republic has filed 17 new actions against TCT, six of which were filed in or have subsequently been removed to federal court. In four of the six pending federal court actions, Old Republic has requested the same declaratory relief it seeks in Count VI of its Complaint in this action. Accordingly, TCT filed motions in each of those courts requesting consolidated consideration of the Excessive Claims Provision in a single court—this Court.

A stay of proceedings is proper under these circumstances. This Court was the first to obtain jurisdiction over the parties and their disputes concerning the Excessive Claims Provision, and, thus, it has power to enjoin Old Republic from repeatedly litigating claims arising out of that Provision. Furthermore, as is evident from the parties' filings in these and the parallel proceedings, the Excessive Claims Provision raises numerous and complex issues. Absent analysis of the Excessive Claims Provision by a single court, each of the five federal courts asked to decide this issue will be forced to expend duplicative judicial resources, which may ultimately result in conflicting rulings. This Court could preempt such a scenario by staying all parallel proceedings, pending its consolidated consideration of the scope and enforceability of the Excessive Claims Provision.

In support of this motion, TCT relies on the following materials submitted herewith:

1. Transcontinental Title Company's Memorandum in Support of Motion to Stay Parallel and Dependent Proceedings; and

2. Affidavit of Jodie E. Buchman, Esq.

FOR THESE REASONS, Transcontinental Title Company requests that this Court enter an Order staying all parallel federal proceedings[1] until such time as this Court resolves all issues

[1] At the moment, the parallel proceedings are: Old Republic National Title Insurance Company v. Transcontinental Title Company, U.S. District Court for the Eastern District of Louisiana, Case No. 06-11148; Old Republic National Title Insurance Company v. Transcontinental Title Company, U.S. District Court for the Southern District of Iowa, Case No. LACV067627; Old Republic National Title Insurance Company v. Transcontinental Title Company, U.S. District Court for the Middle District of Tennessee, Case No. 3:07-CV-00212; and Old Republic National Title Insurance Company v. Transcontinental Title Company, U.S. District Court for the Eastern District of Arkansas, Case No. 4:07-CV-0460.

concerning the scope and enforceability of the Excessive Claims Provision contained in the parties' June 2004 Agency Agreement.

TRANSCONTINENTAL TITLE CO.,

By its attorneys,

/s/ Michael D. Vhay
Michael D. Vhay (BBO #566444)
Zachary N. Coseglia (BBO #663687)
DLA PIPER US LLP
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (*telephone*)
(617) 406-6100 (*fax*)

Dated: July 23, 2007

**LOCAL RULE 7.1 CERTIFICATION**

On July 23, 2007, I conferred in good faith with Attorney Thomas M. Looney, counsel for the Plaintiff, in accordance with Local Rule 7.1. We were unable to resolve or narrow the issues presented by this motion.

/s/ Michael D. Vhay
Michael D. Vhay

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OLD REPUBLIC NATIONAL TITLE INSURANCE CO.,<br><br>Plaintiff/<br>Counterclaim-Defendant,<br><br>v.<br><br>TRANSCONTINENTAL TITLE CO.,<br><br>Defendant/<br>Counterclaim-Plaintiff. | CIVIL ACTION NO. 06-11903-NMG |

# TRANSCONTINENTAL TITLE COMPANY'S MEMORANDUM IN SUPPORT OF MOTION TO STAY PARALLEL PROCEEDINGS

## Factual Background

*Old Republic's Complaint and its Request for a Declaratory Judgment*

Plaintiff/Counterclaim-Defendant Old Republic National Title Insurance Company ("Old Republic") filed its Complaint in this action on September 15, 2006, in Suffolk County (Massachusetts) Superior Court. Counts I-V of the Complaint challenge defendant/ counterclaim-plaintiff Transcontinental Title Company's ("TCT") conduct in closing and issuing title-insurance policies in connection with two residential real-estate sales in 2003. Counts I-V allege that TCT is liable for Old Republic's losses on these sales under a variety of theories (breach of contract, negligence, indemnification, and violation of M.G.L. c. 93A).

In Count VI of its Complaint, Old Republic seeks a declaration concerning the scope and enforceability of § XX(C) (the "Excessive Claims Provision") of an Agency Agreement between Old Republic and TCT. (Old Republic attached the Agency Agreement to its Complaint as

Exhibit A.) Old Republic and TCT signed the Agency Agreement in June 2004, more than six months after the second of the transactions disputed in Counts I-V. The Agency Agreement terminated in September 2006. *See* Complaint, ¶¶ 62-67. The Agreement contains no choice-of-law provision.

The parties' agreements prior to June 2004 contained no provision concerning "excessive claims." *See* Affidavit of Jodie Buchman, ¶ 2 and Exhibits A-B thereto ("Buchman Affidavit," filed herewith). The Excessive Claims Provision provides:

> Agent [TCT] shall reimburse to Insurer [Old Republic], by no later than March 31 following year end, the amount by which the aggregate amount paid by Insurer for claims on behalf/on account of Agent exceeds five percent (5%) of gross premiums remitted by Agent to Insurer in that same calendar year.

Agency Agreement at § XX(C). The Agency Agreement fails to specify:

- Whether the Excessive Claims Provision is "no fault" (as Old Republic has alleged, *see* Complaint, ¶ 10), or whether TCT may assert defenses such as Old Republic's negligence in handling claims, its failure to mitigate its losses, or Old Republic's breaches of the implied covenant of good faith and fair dealing;

- The time period that governs the Excessive Claims Provision, including (among other things) (i) whether it is based on when closings occurred, when claims were submitted or when claims were paid, (ii) whether it has a retroactive effect (such that it can be applied to policies issued prior to June 2004), and (iii) whether it applies to claims that arose after the Agency Agreement was terminated;

- Whether the Excessive Claims Provision applies to claims arising in states that are not expressly covered by the Agency Agreement;

- Whether the Excessive Claims Provision trumps the Agency Agreement's Responsibility for Loss Provision, and other contracts between the parties governing claims;

- Whether the Excessive Claims Provision preempts common-law negligence, breach of contract, indemnity and/or contribution claims;

- Whether the Excessive Claims Provision survives termination of the Agency Agreement;

- Whether the Excessive Claims Provision's term "claims on behalf of/on account of Agent" extends to claims made under Old Republic policies not issued pursuant to the Agency Agreement;
- Whether the Excessive Claims Provision's term "on behalf of/on account of Agent" captures a more limited range of claims than those arising under any policy issued by TCT pursuant to the Agency Agreement;
- How damages under the Excessive Claims Provision should be calculated; and
- Whether the Excessive Claims Provision is enforceable in states where TCT was not licensed to underwrite insurance.

Because of the tremendously uncertain scope and application of the Excessive Claims Provision, it is likely that this Court will have to render a decision on Count VI of Old Republic's complaint before it can determine how this litigation should proceed.

*Old Republic's Duplicative Lawsuits*

On October 18, 2006, TCT removed Old Republic's Suffolk County action to this Court. On October 25, 2006, TCT answered the Complaint and counterclaimed. Like Count VI of the Complaint, TCT's counterclaim addresses the enforceability of the Excessive Claims Provision.

Beginning in December 2006, and instead of filing counter-counterclaims in this Court, Old Republic filed seventeen new actions against TCT elsewhere. *See* Buchman Affidavit at ¶ 3. Of these seventeen actions, six were filed (or subsequently were removed) to federal courts.[1] *See id.* at ¶ 3. In four of the six federal actions, Old Republic seeks the identical declaratory relief concerning the Excessive Claims Provision that Old Republic seeks in Count VI of its Complaint in this action. *See id.* at ¶¶ 3-7 and Exhibits C-F. Those claims likewise prompted TCT to file counterclaims addressing the scope and enforceability of the Excessive Claims Provision. *See*

---

[1] The amounts in controversy in the eleven remaining state-court actions fell below the requisite jurisdictional amount. Of those eleven actions, eight contain the identical request for declaratory relief posed in Count VI in this action. *See* Buchman Affidavit at ¶ 3. While 28 U.S.C. § 2283 likely prevents this Court from staying those actions, should this Court grant TCT's motion to stay Old Republic's parallel federal lawsuits, TCT will then move in each of the eight state courts for a stay.

*id.* at ¶ 8 and Exhibits G-J. TCT also filed motions in those four federal courts seeking consolidated consideration of the Excessive Claims Provision in a single court, this Court.[2] *See id.* at ¶ 9. As in this action, the Courts in the four federal lawsuits in which the Excessive Claims Provision is at issue must decide all of the questions concerning the scope and enforceability of the Excessive Claims Provision before they may proceed to Old Republic's other disputes with TCT.

**Argument**

I. THIS COURT HAS THE POWER TO ENJOIN OLD REPUBLIC FROM REPEATEDLY LITIGATING THE EXCESSIVE CLAIMS PROVISION.

"[Forever] courts of equity have had jurisdiction to prevent a multiplicity of actions on the same cause, and it is no longer open to question that a federal district court in the exercise of that jurisdiction may enjoin a party before it from attempting simultaneously to litigate the same matter with the same opponent in another court of co-ordinate jurisdiction in the same judicial system." *Small v. Wageman*, 291 F.2d 734, 735 (1st Cir. 1961).

> "Courts already heavily burdened with litigation with which they must of necessity deal should…not be called upon to duplicate each other's work in cases involving the same issues and the same parties…." Hence, even when the same party is plaintiff in both actions, the instances where the second court should go forward despite the protests of a party to the first action where full justice can be done, should be rare indeed.

*Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1203 (2d Cir. 1970), quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941).

The propriety of a stay of a duplicative action is left to the equitable discretion of the district court. *See Small*, 291 F.2d at 736; *Warshawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d

---

[2] Old Republic has opposed each of TCT's motions to consolidate consideration of the Excessive Claims Provision in this Court, citing (among other things) TCT's failure to move in this Court for such relief, and questioning whether this Court would entertain such consolidated consideration. *See* Buchman Affidavit at ¶ 9 and Exhibit K.

1257, 1260 (7th Cir. 1977). "In determining whether the prosecution of a suit in another forum should be preliminarily enjoined pending disposition of the action in which the motion is filed, the probability of the movant's success on the merits and the nature of his injury are of secondary significance; the primary factor to be weighed is the convenience of the parties and the courts." *Scott & Fetzer Co. v. McCarty*, 450 F. Supp. 274, 276 (N.D. Ohio 1977).

In considering whether to grant a stay of duplicative proceedings, the court should give great weight to which court first obtained jurisdiction over the parties and the issues. *See Small*, 291 F.2d at 736. "[U]nless there are unusual circumstances, the court should apply the 'general rule that the party filing later in time should be enjoined from further prosecution of his suit.'" *United Fruit Co. v. Standard Fruit & S.S. Co.*, 282 F. Supp. 338, 340 (D. Mass. 1968) (footnote omitted), quoting *Martin v. Graybar Elec. Co.*, 266 F.2d 202, 204 (7th Cir. 1959).[3] This is particularly true where, as here, the plaintiff in the first-filed action seeks identical relief in a later-filed action. *See Small*, 291 F.2d at 736.

An injunction staying later litigation may be appropriate even if later suits contain non-identical claims. The chief question is whether the first-filed action addresses the core of later-filed actions, such that resolution of the first-filed action will resolve the principal claim(s) of the later-filed actions. *See Semmes*, 429 F.2d at 1203 (where identical plaintiff raises identical core claims in two actions, "in the absence of sound reasons the second action should give way to the

---

3 The importance of this factor is an outgrowth of the "first-to-file" rule, "which was initially articulated by the Supreme Court in 1824 [to the effect] that 'in all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it.'" *Keating Fibre Int'l, Inc. v. Weyerhaeuser Co., Inc.*, 416 F. Supp. 2d 1048, 1051 (E.D. Pa. 2006), quoting *Smith v. McIver*, 22 U.S. (9 Wheat.) 532, 535 (1824). The rule "rests on principles of comity and sound judicial administration and is used by courts to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case pending in another court." *Nabors Drilling USA, L.P. v. Markow, Walker, PA*, 451 F. Supp. 2d 843, 845 (S.D. Miss. 2006). The "concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (internal citations omitted); *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996) (same effect).

first"; presence of non-identical claims in second action merits only a stay of the second action, instead of outright dismissal); *see also TPM Holdings*, 91 F.3d at 4 ("Where the overlap between the two suits is nearly complete, the usual practice is for the court that first had jurisdiction to resolve the issues and the other court to defer. But where the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute.").

## II. THIS COURT SHOULD STAY ALL RELATED FEDERAL LITIGATION BETWEEN THE PARTIES UNTIL THIS COURT RULES ON THE SCOPE AND ENFORCEABILITY OF THE EXCESSIVE CLAIMS PROVISION.

It is clear from the Complaint and Answer/Counterclaim in this action, as well as from the parties' briefs in the four other federal lawsuits where the Excessive Claims Provision is at issue, that the Provision raises numerous and complex issues. A court will have to interpret the Excessive Claims Provision (1) to determine what it means and (2) how it interacts with the Responsibility of Loss Provision and other provisions of the Agency Agreement, before it can decide any of Old Republic's claims in this or any other action between the parties. In order to declare the parties' rights and duties under the Excessive Claims Provision, a court will have to decide first which state's law applies. A court will then have to address (at the very least) the ten issues listed on pages 2-3 of this memorandum.

Consistent with the authorities cited in section (I) above, TCT proposes that a single court -- the court to which Old Republic turned first, this Court -- decide these issues. Absent analysis of the Excessive Claims Provision by a single court, this Court (and all of the other courts where these suits have been filed) will have to expend duplicative judicial time and risk the chance of conflicting rulings. The conflicts could be extreme. Since the Agency Agreement contains no governing-law provision, it is possible (under Old Republic's apparent preferred scenario) that

five federal courts (including this Court), applying each forum state's conflicts-of-law principles, could arrive at five different conclusions regarding the law that governs the Agency Agreement. Each court would then proceed (under perhaps as many as five different state laws) to address the ten sub-issues raised by the Excessive Claims Provision. The possible variations in outcomes are exponential.

There is no downside to one court (and, perhaps, its appellate court) determining Old Republic's duplicative declaratory-judgment counts. Such an approach would conserve judicial resources and provide a consistent result. If multiple courts are adjudicating the exact same declaratory judgment claim, the waste of judicial resources (not only by the five district courts, but also their circuit courts of appeals) will be significant. Once this Court determines the scope of the Excessive Claims Provision, Old Republic's ancillary counts in the other four federal lawsuits may be adjudicated locally. As Old Republic's ultimate goal is to recover money damages, there is no prejudice to Old Republic in first resolving the issues relating to the Excessive Claims Provision before addressing any other claim. The benefits of trying the same issue between the same parties in one court clearly outweigh any potential inconvenience to Old Republic.

**Conclusion**

For these reasons, this Court should grant Transcontinental Title Company's Motion to Stay Parallel Proceedings.

TRANSCONTINENTAL TITLE CO.

By its attorneys,

/s/ Michael D. Vhay
Michael D. Vhay (BBO #566444)
Zachary N. Coseglia (BBO #663687)
DLA PIPER US LLP
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (*telephone*)
(617) 406-6100 (*fax*)

Dated: July 23, 2007